# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSLYVANIA

| | |
|---|---|
| **DR. LESLIE M. SALKIN** : <br> 8 Pommel Lane : <br> Blue Bell, PA 19422 : <br> *Plaintiff* : <br> : <br> : <br> : <br> v. : <br> : <br> : <br> **TEMPLE UNIVERSITY OF** : <br> **THE COMMONWEALTH SYSTEM** : <br> **OF HIGHER EDUCATION - SCHOOL** : <br> **OF DENTISTRY** : <br> 3223 North Broad Street : <br> Philadelphia, PA 19140-5096 : <br> *Defendant* : | CIVIL ACTION <br> NO.: <br> <br> <br> **JURY DEMAND** |

## COMPLAINT

### JURISDICTION

1.  This action is brought pursuant to Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., ["ADEA"]. Plaintiff further invokes the pendent jurisdiction of this Court, provided by 28 U.S.C. § 1367, to hear and decide claims arising under state law under the Pennsylvania Human Relations Act.

2.  This is an action for equitable, declaratory, injunctive, and other appropriate relief, including back pay, costs, compensatory and punitive damages and attorney's fees, to redress the deprivation of Plaintiff's rights secured by 29 U.S.C. §§ 621 et seq.

3.  The jurisdiction of this court is invoked to secure protection of, and to redress deprivation of, rights secured by the age discrimination in employment act providing for injunctive and other

relief against discrimination in employment on the basis of age.  Plaintiff further seeks the protection of the court under federal and state statutes providing for injunctive and other relief against discrimination in employment on the basis of age, through a hostile work environment as well as retaliation by the employer against the plaintiff after he reported the hostile work conditions.  This court has jurisdiction of this action under 29 U.S.C. §§ 621 et seq.  Jurisdiction under state law through 28 U.S.C. §1367 is under the Pennsylvania Human Relations Act (hereinafter referred to as the "PHRA") and the Philadelphia Code, concerning discrimination of an employee based on age and a hostile work environment as well as retaliation by the employer.

4.      The Pennsylvania Human Relations Act forbids individuals from aiding or abetting an employer's discriminatory actions against an employee.  43 Pa.C.S.A §955(e).  As such, the Pennsylvania Human Relations Act affords Plaintiff the right to seek redress against individual defendants.

5.      Plaintiff herein has met all administrative agency requirements  by filing dual claims with both the Equal Employment Opportunity Commission ["EEOC"] under Docket No.: 17GA500165 (later identified as  17G-2005-00165) and with the Philadelphia Commission on Human Relations ["PCHR"] under Docket No.: E05034283.   Plaintiff brings this action in a timely manner with the  authorization and acknowledgment of both administrative agencies.  A Right to Sue letter was issued by the EEOC on November 22, 2005 by  EEOC District Director, Marie M. Tomasso.   This complaint is timely filed well within the ninety-day requirement as dictated by  EEOC regulation and policy.

**Parties**

6. Plaintiff, Dr. Leslie M. Salkin, is a male citizen of the United States and a resident of the Commonwealth of Pennsylvania in Montgomery County at the town of Blue Bell. Plaintiff was born on July 22, 1941 and at all times relevant to this complaint was well over forty years of age. Plaintiff is an employee for purposes of the ADEA (29 U.S.C. §630(f) & 29 U.S.C. §631(a))

7. Defendant, Temple University Of The Commonwealth System Of Higher Education - School of Dentistry ["Temple Dental"], is an employer for purposes of the ADEA (29 U.S.C. §630(b)). Temple Dental is a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 1330 West Berks Street, Philadelphia, PA. This corporation also operates a school of dentistry at 3223 North Broad Street, Philadelphia, PA 19140. This defendant affects commerce and has employees totaling well over the statutory minimums.

**FACTS**

8. Paragraphs 1 through 7 are incorporated herein by reference as though fully set forth.

9. Plaintiff was originally hired by Temple Dental in the year 1970 as an Assistant Professor functioning as an employee of Temple Dental educating the student population in the advanced art of medical dentistry. In 1977, Plaintiff's work and efforts as an educator in dentistry was rewarded when Plaintiff was promoted to a full tenured professor. Plaintiff is currently supervised by Dr. Tom Rams at Defendant University.

10. In 2003, Plaintiff felt that he had begun to be targeted by his supervisor, and the Temple Dental administration, for uniquely disparate treatment. Plaintiff perceived the development of a hostile work environment, with him as the target of animus, because he was one of the oldest

3

tenured professors at Temple Dental.  As an elder tenured full professor, Plaintiff had witnessed other tenured professor colleagues of his, who were of similar age (well over forty years old) also being treated in a disparate and hostile manner by their supervisors.

11.    Employees of Temple Dental who were younger than forty years of age and who had not been granted tenure as faculty were not being treated in disparate nor hostile manner from the same supervisory staff.

12.    From 2003 and ongoing, the most flagrant aspect of disparate and hostile treatment experienced by Plaintiff, who was one of the most senior of Temple Dental tenured professors, related to his supervisor's conduct.  Plaintiff's supervisor deliberately and disproportionately targeted Plaintiff, as an elder tenured professor, with an entire 100% increase in his teaching and student management workload.  His supervisor's conduct was supported by the Temple Dental administration and stood in stark contrast to the demonstrably much lighter student management and teaching workloads as carried by young (generally, under forty years of age) graduate student or adjunct faculty.  The doubling of Plaintiff's workload was as a result of direction from his supervisor Dr. Rams.  There was no process by which the assignment was discussed or reviewed with Plaintiff.

13.    This caused tremendous academic and professional problems for Plaintiff because of his responsibilities that attend al tenured full professors in academia and , specifically, at Temple Dental.  Plaintiff was suddenly completely deprived of the crucial and necessary time needed for tenured professorial faculty responsibilities.

14.    The targeting of Plaintiff with disparate workloads made it virtually impossible for Plaintiff to conduct peer review statistically significant research needed for publication in scientific and medical journals.  Publication of such studies are a key responsibility for tenured

professor faculty as that work brings prestige, acclaim and funding to the employer herein, Temple Dental. Indeed, failure to conduct significant scientific research and/or the failure to actively publish the scientifically valid and reliable studies such as peer review research could cause a tenured professor faculty member to lose his position within an employer university.

15. The disparate treatment thrust upon Plaintiff in the form of exponentially higher workload unrelated to the scholarly duties and responsibilities of a tenured professor such as peer publication, research and article abstract reviews were no longer possible because of the enormous increased workload. It is important to recognize that the added workload placed upon this elder Plaintiff is generally the work product of new untenured faculty, graduate students and untenured visiting teaching staff. Indeed, Temple Dental frequently sought young untenured faculty to join as employees even though these young faculty members were neither properly credentialed or adequately trained to do any work other than the work that was given, instead, to Plaintiff.

16. In the 2004 academic year, Plaintiff noticed that his colleague Dr. Stark, another senior elder tenured faculty member of Temple Dental was experiencing similar disparate treatment and animus from his direct supervisor that Dr. Stark stated was due to his age (then 53 years old) and known disability (which affected his right hand and prevented him from continuing in clinical practice as opposed to academia).

17. Despite Plaintiff Salkin's efforts to complete the dramatically increased and intense workload placed upon him by his supervisor, he was denied any salary increase for merit or for basic cost of living adjustments. The denial of proper financial and promotional incentives was strictly a commentary on the "worth" attached to Plaintiff as a tenured professor at Temple Dental as deemed relevant by the employer. The employer's treatment of Plaintiff was not based

5

upon the actual quality or dedication associated with Plaintiff's work but was disparate treatment by the defendant towards Plaintiff. Indeed, younger non-tenured teaching personnel were afforded opportunities for both merit and cost of living salary increases.

18. Research grants that professors and other faculty frequently apply for to known philanthropic or government agencies are the primary funding sources for much of the research work that tenured professors in all of academia turn to in order to generate studies that lead to publications and prestige for the employer. Given that tenured faculty are judged by their ability to produce successful studies, research and publications from approved grant applications that obtain the necessary funding from limited public or private sources, it is a primary issue of concern for every tenured faculty member – Plaintiff included.

19. Continuing through 2004, Plaintiff had received exciting news about a research grant that he and tenured elder Professor Boberick (45 years old) had successfully petitioned on, and made application for, was accepted for funding by the grant trustees. Plaintiff was informed by defendant, Temple Dental, and by his direct supervisor, that neither the defendant administration nor the Plaintiff's supervisor, would give support for Plaintiff to either receive and/or establish a program from the grant money Plaintiff and Dr. Boberick had worked so hard to acquire.

20. In the words reserved for agism and age related animus, Plaintiff who had been enduring unconcienable increased workloads due to age related animus, was now informed that he was not a "reliable person" to handle such an important grant. This insult was transparent and clearly targeting Plaintiff's age, tenure and cost to the defendant due to benefits and salary that is commensurate with a professor of large professional statutre.

21. The decision that Plaintiff was too feeble to properly handle such a large grant was made even more insulting by the fact that it was due to Plaintiff's skill, devotion and recognition

6

amongst other scholars that the grant was ever secured in the first place.  His supervisor was making the inference that since Plaintiff was advanced in years, that he became a liability to defendant and was viewed therefore, as a negative  asset as compared to younger less experienced and unprofessional employees.  Older respected and renowned faculty were not viewed by Temple Dental as having worth as younger faculty had  at Temple Dental.

22.     Throughout 2004 and 2005, Plaintiff  watched as both he, and the other older tenured faculty professors, were pressured to resign from the Temple Dental by the same disparate treatment he was experiencing (i.e. no time to complete tenured faculty responsibilities; a huge increase in low priority work usually reserved for untenured faculty, graduate students or adjunct faculty; the denial of grants and loss of grant funding opportunities due to lack of support  for older tenured faculty, etc.).

23.     Plaintiff noted that almost the entire elder tenured faculty at Temple Dental had been forced out by hostile work environment issues coupled with frequent disparate treatment. Plaintiff's  continuing poor treatment by Temple Dental was evidenced by age related animus displayed through disparate treatment and hostility from the defendant administration and tangible negative job events ( lack of merit increases; lack of cost of living salary increases; active sabotage of grant activities; doubling of irrelevant tedious workloads, etc.).

24.     Plaintiff was continually targeted by Temple Dental as one of the elder tenured professors who were being pressed to retire, leave or quit.  Methods used to push Plaintiff in the direction of resignation included disproportionate work assignments directed at plaintiff and other older tenured staff by his supervisor.  Another tactic used by Plaintiff's supervisor was to isolate older faculty from the young educational staff as if to suggest that that older tenured faculty members, like Plaintiff, had nothing useful to offer the defendant university educational environment.

25. The interference and denial of grant funding access and use, as well as, the absence of the opportunities to produce core research, peer review abstracts, publication and new science are actions by Temple Dental to save money and bring in new personnel in order to recreate policies and practice without having to employ the rigors of academia represented in fact by elder tenured faculty such as Plaintiff.

26. All of these actions negatively affected Plaintiff by cutting short his ability to rise in his field, ended promotional opportunities and the ability to publish and negated the possibility of salary increases. The entire attempt by the defendant against Plaintiff as an elder tenured faculty member was to get Plaintiff to retire so he could be replaced by a young, non-tenured professionally limited educational staff who could not demand nor justify higher salaries and benefits.

## I. FEDERAL CAUSE OF ACTION

### A. AGE DISCRIMINATION IN EMPLOYMENT ACT
### 29 U.S.C. §§ 621-634

27. Paragraphs 1 through 26 are incorporated herein by reference as though fully set forth.

28. Plaintiff was born on July 22, 1941 and at all times relevant to this complaint was well over forty years of age, in his mid-sixties.

29. The basis for Plaintiff's disparate treatment was, and continues to be, pretext for the real reason that, was his age in whole or part. By treating Plaintiff with age bias and disparate treatment focused on ignoring the reasonable accommodations for his disability, defendant denied equal employment opportunities to Plaintiff because of his age. As a direct and proximate result of defendant's age discrimination, Plaintiff has suffered and continues to suffer substantial losses incurred in loss of past and future earnings, promotions, loss of stature and

8

economic value within his profession, loss of bonuses, loss of deferred compensation, and other employment benefits.

30. As a result of defendant's willful discriminatory acts as alleged herein, Plaintiff is entitled to damages, pursuant to the ADEA, 29 U.S.C.A. § 626(b).

31. As a result of the discriminatory conduct and actions of defendant herein alleged, Plaintiff has no effective, adequate, or complete remedy at law, because defendant continues to engage in the wrongful practices alleged herein.

32. Age based animus, directed at Plaintiff by defendant in the workplace, constitutes discrimination as prohibited by Age Discrimination in Employment Act.

33. After thirty five years of loyal and dedicated service to defendant, Plaintiff is now forced to face the prospect of job-hunting at age 64 years or to withstand the continuation of disparate treatment meant to harass and target Plaintiff for age bias .

## B. RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §§621 ET. SEQ.

34. Paragraphs 1-33 are incorporated herein by reference as though fully set forth.

35. Plaintiff was subjected to hostility and disparate treatment by Dr. Tom Rams and administrative personnel, whose positions within the School of Dentistry made it easier for them to combine their efforts directed at discriminatory animus to create a hostile workplace environment based upon Plaintiff's age.  These department heads, supervisors and administrators were supportive of the anti-age bias atmosphere they helped create thus creating a hostile work environment.

36. Plaintiff was treated with an uncompromising attempt to overwhelm him with workloads that were patently unreasonable and 100% greater than that faculty with no tenure and who were

much younger all in an attempt to get Plaintiff to resign. Plaintiff exercised his rights under the PCHR and EEOC.  Because Plaintiff exercised his statutory protected rights, Defendant University retaliated against him by refusing to give well deserved merit salary increases or even basic cost of living salary increases.

## **PUNITIVE DAMAGES**

37.     Paragraphs 1-36 are incorporated herein by reference as though fully set forth.

38.     The conduct of the Defendant was outrageous, malicious, abusive, wanton, willful, reckless and intentionally designed to inflict harm upon Plaintiff.

39.     As a result of the acts of Defendant, alleged in the preceding paragraphs, Plaintiff is entitled to punitive damages.

40.     The acts of Temple Dental were committed willfully, wantonly, maliciously, intentionally, outrageously, and deliberately and by conduct so egregious as to shock the conscious.

41.     The actions of the Defendant, constituted deliberate indifference to the rights of Plaintiff and resulted in the imposition of an ongoing abusive and negative disparate treatment of Plaintiff in violation of the United States Constitution, and the laws of the Commonwealth of Pennsylvania.

42.     Therefore, Plaintiff is entitled to an award of punitive damages from defendant in an amount to be decided at trial in proportion to the willful harm caused to Plaintiff by defendant.

43.     By these actions, Defendant has deprived Plaintiff, Dr. Salkin, of his rights secured by the United States Constitution in violation of the Age Discrimination in Employment Act (29 U.S.C. §§621 et seq.).

## II. STATE CAUSE OF ACTION

### VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

44. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

45. The conduct described above violated the Pennsylvania Human Relations Act ("PHRA") 43 Pa.C.S.A. 955 and affords Plaintiff the opportunity to seek remedies afforded by §9 of the Act.

46. Plaintiff seeks redress under the PHRA for all remedies available to him given the loss of promotional opportunity caused by discriminatory animus of the defendant based upon Plaintiff's disability and age.

### VIOLATION OF THE PHILADELPHIA CODE
### FAIR PRACTICES ORDINANCE §9-110

47. Paragraphs 1 through 46 are incorporated herein by reference as though fully set forth. The Plaintiff seeks redress for his complaint under the Philadelphia Code Fair Practices Ordinance ("PCFPO").

48. Plaintiff has a right to a private action under PCFPO §9-1110 to seek damages for the violations by defendants of the PCFPO including back pay, injunctive relief, attorney's fees and any relief the Court deems appropriate.

49. The PCFPO has as a central purpose the elimination of discriminatory animus in the workplace based upon – amongst other rights - an employee's age and retaliation against those who seek redress for complaints of violations of the law. Plaintiff's actions, herein, are in keeping with the spirit and purpose of the PCFPO §9-1103.

50. The conduct of the defendant was such that it promoted and supported the discrimination towards Plaintiff, furthering it, by permitting the continued improper age based animus to fester

unchallenged except by Plaintiff. The defendant further supported the discrimination by permitting an environment of retaliation to exist in Plaintiff's work-place.

## **RELIEF**

**WHEREFORE**, Plaintiff prays for the following:

a. Defendant be permanently enjoined from discriminating against Plaintiff on any basis forbidden by the ADEA and the PHRA and the Philadelphia Code;

b. Defendant be enjoined from harassing or intimidating and targeting Plaintiff;

c. Defendant be ordered to compensate, reimburse and make whole the Plaintiff for all of the benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to pay, benefits, training, promotions, and seniority.

d. Plaintiff prays for an award of actual damages for doctor, hospital, and other medical, psychiatric, psychological expenses in an amount yet to be determined. Plaintiff prays for an award to compensate him for the pain and suffering and for the humiliation caused by Defendant's unlawful treatment in an amount yet to be determined.

e. Plaintiff prays for an award of punitive damages in an amount believed by the Court to be appropriate to punish Defendant for the willful and malicious misconduct and necessary to deter Defendant from engaging in such misconduct in the future.

f. The Court grants such equitable and legal relief as is proper and just.

g. Plaintiff prays that the Court award Plaintiff costs and expenses of this action

and award Plaintiff reasonable attorney fees as provided the ADEA.

Plaintiff demands a trial by jury on issues triable to a jury.

Respectfully submitted,

_____
ARTHUR B. JARRETT, JD, MSW
Attorney I.D. #61953
Stephen Girard Building
21 South 12th St., 9th Floor
Philadelphia, PA 19107
(215) 751–9865
COUNSEL FOR THE PLAINTIFF

Dated: 12/15/05